His Honor, CHARLES F. CLAIBORNE,
rendered the opinion and decree of the Court, as follows:
*224 This is a suit on a fire insurance policy.
Plaintiff avers that on August 12, 1910, the defendant company bound itself to indemnify him during five years against loss by fire according to the charter of the company up to the- amount of $1,000 on household furniture and effects contained in the house No. 3322 St. Philip Street; that on December 13th, 1912, a fire consumed all the furniture and effects insured, and that the Insurance Company refuses to pay him. He prays for judgment for $1,000 with twelve per cent damages and attorney’s fees.
The defendant company admitted the policy and the fire, but denied any liability thereunder for the reason that the plaintiff had violated the provisions of said policy and of the charter and by-laws of the defendant company in three particulars.
First, that the plaintiff had not paid his premiums in full;
Second, that he had a larger quantity of burning oil stored on the premises than the policy allowed, and,
Third, that the plaintiff burnt or procured to be burnt, the property insured; that in the First City Criminal Court .an affidavit had been made against him charging him with arson, and that after trial in skid 'Court he had been committed to the Criminal District Court, and that thereafter an information had been lodged in said Court ■ against him, charging him with having burnt the prem-1 ises No. 3322 St. Philip Street, which was still pending in said Court.
There was a judgment for the plaintiff for $120 and he has appealed.
*225 The defendant answered the appeal in the following words:
“That it is informed and verily believes that the judgment appealed from is erroneous and prejudicial to its interest, and that it is entitled, according to the law and the evidence, to a judgment in its favor and against the said 'Charles Randazzo, dismissing absolutely his suit against it. "Wherefore, respondent and appellee prays that the judgment appealed from be reversed and that this- Honorable Court render judgment in its favor and against the said Charles Randazzo, the appellant, dismissing absolutely his suit against it, at his costs and for general and equitable relief. ’ ’
The plaintiff argues, in this Court, that the defendant’s answer to the appeal is too general in its character in failing to specify ‘ ‘ the points ’ ’ on which the judgment is prejudicial to its interests, and for that reason it is not entitled to an amendment of the judgment appealed from.
In support of his proposition the appellant quotes no ¡authority. He relies exclusively on the Code of Practice.
Article 592:
“Nevertheless, if the appellee complain of some parts of the judgment of the inferior Court, he may, without appealing from the same, pray it to be set aside in those points in which he believes that he is aggrieved. ’ ’
Article 888:
“If the appellee has cause to complain of the judgment appealed from, he may, without appeal on his part, state in his answer the points on which he thinks he has sustained wrong, and may pray that *226 the judgment be reversed with respect to them, and confirmed with costs on the rest.”
We understand the words “points” in those two articles to be synonymous with “parts” of the judgment.
As there was only one part or point to- toe judgment appealed from, which was a judgment for plaintiff, w ,- are of the opinion that the appellee has complied with the law by alleging in its answer to the appeal tfiat i oe judgment was erroneous and that it was entitled lo a judgment in its favor dismissing the suit absolutely.
An examination of the case leads us to the conclusion that we need not consider any other than the second defense, that the plaintiff had a larger quantity of burning oil stored on the premises than the policy allowed.
The application for insurance was made in writing on the blanks of the defendant company and was signed thus: “Charles Eandazzo, A. Chapoit.” The application for insurance is styled, “Application for membership of........; ” because the defendant is a mutual society and that all insured become members. The application is short and contains this clause:-“I further bind myself to act faithfully according to- toe charter and bylaws of said society, of which I have received a copy.” The plaintiff is 'bound by this clause for two reasons: 1st., because Chapoit was his agent to sign the application, and 2nd., because, as a member, he is bound by the by-laws of the society independently of any express agreement on his part.
43 A., 1136; 112 La., 960; 26 A., 13.
The policy of insurance reads as follows:
“This certificate of membership witnesseth that whereas Chas. Eandazzo ha.s become a member of *227 the Louisiana Mutual Aid Fire Indemnity Society” and “reference is hereby made to his application, which forms .a part and parcel.of this certificate,” etc.
Article X of the by-laws reads as follows:
“The storing of * * * coal oil, burning fluid, benzine, * * * and other combustible oils * * * in large quantities * * * is considered unlawful and shall render the certificate void,” etc.
The storage in large quantities may be relative.
In this case a sufficient provision for domestic purposes, such as lighting or heating, would not be .a- prohibited ‘ ‘ large quantity. ’ ’ But the evidence in this case establishes a larger quantity on hand than the legitimate purposes above mentioned required, and a sufficient quantity to vitiate the policy. The evidence is as follows:
Edward Haggerty, deputy fire marshal, has been employed in the office for about eight years; has experience in investigating the origin of fires; visited plaintiff's premises after the fire in company with Deputy Marshal James Smith; made a sketch of the interior of the building which he produces; in the front room there was a bucket, a demijohn .and a fuse at the place indicated on the sketch;'in the rear of the second room there was a sugar barrel containing about eighteen inches of fluid which was a mixture of water and gasoline, and there was a demijohn floating on top of the barrel; in the center of the room there was a five-gallon demijohn with a cotton fuse; the demijohn in the barrel had gasoline in it.
James A. Smith is a deputy fire marshal; visited plaintiff’s house at about 2:40 while the fire was in progress; went through the building with a search light *228 and in the second room located the remains of a demijohn and .also a sugar barrel half full of gasoline and a. clemijohn floating in the barrel on top of the fluid, and a fuse in the npck of the demijohn; in the first room he found a bucket which contained the remains of a demijohn and a fuse; there was a strong odor of oil .about th¿ place; several days after the fire he had two boys get buckets and empty the barrel into the street, on account of the complaint of the neighbors of the strong odor of the fumes of oil; he had it emptied into the street so that the mud would absorb it; there was no doubt in the world that there was gasoline in the barrel; the ceiling was burnt up to almost the front of the building while the flooring was only charred; the demijohns in the first and second rooms were broken.
Captain John Ward, 24 years a fireman, in charge of the fire until the chief came down, says: when they went into the main building the heat from the oil and the smoke drove them back to the door; there was a barrel in the second room containing water and oil and a demijohn with oil; in the front room there was a bucket that exploded.
A. Monaghan, one of the assistant chiefs of the Fire Department, says: on putting water into' the house the water was coming out on the floor and oil flowed on top, so that he had to take the men out on account of safety; after they got control of the fire they went in, and one of the men brought out a demijohn; he smelled it and it was gasoline; there was also a barrel in the second room and he put his hand into it and t/here was gasoline oil; it seemed to him the place was saturated and well prepared with oil.
*229 Opinion and decree, March 13th, 1916.
Rehearing refused, April 10th, 1916.
William Kier, lieutenant of Fire Patrol No. 2, was at the fire; his duty was to ascertain the cause of the fire.; he went to the second 'room and was ordered out by the Assistant Chief because the place was full of oil; when the Chief was gone he returned into the second room iancl saw a barrel about three quarters full of water while tue surface was oil, with a demijohn in it.
Comment upon this testimony is unnecessary. Suffice it to say that in our opinion it fully makes out defendant’s case.
A bucket, or demijohn, or barrel, which had contained gasoline, find no place in a bed room or parlor according to rules prevailing in prudently regulated homes.
It is therefore ordered that the judgment 'herein be annulled, avoided, and reversed, and that there now be judgment in favor of defendant rejecting' plaintiff’s demand at his cost in both Courts.
Judgment reversed and demand rejected.